2004 UT 2

**STATE of Utah, Plaintiff and Appellee,**

v.

**Adrian Whitfield GORDON, Defendant and Appellant.**

**No. 20020332.**

Supreme Court of Utah.

Jan. 16, 2004.

Mark L. Shurtleff, Att'y Gen., J. Frederic Voros, Jr., Jeanne B. Inouye, Asst. Att'ys

Gen., Byron F. Burmester, J. Kevin Murphy, Salt Lake City, for plaintiff.

Linda M. Jones, Michael A. Peterson, Salt Lake City, for defendant.

WILKINS, Justice:

¶ 1 Defendant Adrian Gordon appeals his conviction for murder. Gordon argues the evidence presented at his bench trial was insufficient to support the verdict. We affirm.

## BACKGROUND[1]

¶ 2 Gordon was convicted of murdering Lee Lundskog. Lundskog died in the early morning of September 29, 2001 outside a 7–Eleven store in Salt Lake County as a result of numerous blows to the head. Gustavo Diaz–Hernandez, a witness to the incident, saw Lundskog's attacker repeatedly kicking Lundskog. The evidence of homicide was substantial enough that the only issue at trial was the identity of the attacker.

¶ 3 According to the unchallenged facts, Gordon was at the 7–Eleven near the time of the murder wearing a light-colored shirt. Robert Mellen, a regular customer at the 7–Eleven, saw Gordon wave at Lundskog as if to beckon him. Diaz–Hernandez, whose eyesight was quite good, witnessed the attack on Lundskog while waiting for a ride to work and immediately reported it to the person driving him to work. Police later seized a light-colored T-shirt from a place where Gordon was living.

¶ 4 In the announcement of its verdict, the trial court discussed numerous other facts. Gordon challenges many of the trial court's statements regarding the evidence by placing the trial court's statements into three categories: those unsupported by the evidence, improper and irrelevant inferences, and statements that are inconsistent with the evidence. Gordon asserts that the trial court's unsupported, improper, and inconsistent statements, all of which he refers to generically as "findings," must be stricken, leaving a conviction unsupported by sufficient evidence.

1. The facts in this section represent a portion of those unchallenged on appeal.

## ANALYSIS

### I. STANDARD OF REVIEW

[1] ¶ 5 "When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is 'against the clear weight of the evidence, or if [we] otherwise reach[ ] a definite and firm conviction that a mistake has been made.' " *State v. Goodman,* 763 P.2d 786, 786–87 (Utah 1988) (quoting *State v. Walker,* 743 P.2d 191, 193 (Utah 1987)).

### II. SUFFICIENCY OF THE EVIDENCE

¶ 6 As noted above, in evaluating Gordon's insufficiency of the evidence claim we must determine whether the verdict is against the clear weight of the evidence presented at trial. Although we do not discuss each and every fact presented at trial, the trial record provides ample evidence to support the facts discussed below.

¶ 7 Robert Mellen, a frequent customer of the 7–Eleven store where Lundskog was killed, testified at trial concerning his observations at the 7–Eleven on the morning of Lundskog's murder. Mellen arrived at the 7–Eleven shortly after 5:20 a.m. Mellen identified Gordon as being at the store that morning. Upon leaving the 7–Eleven, Mellen returned to his truck in front of the store. According to a surveillance video from inside the 7–Eleven, Gordon exited the store on foot at 5:25:56 a.m. and headed north. While Mellen was backing his truck away from the store about ten seconds later he saw Gordon, whom he identified in a photo line-up, "waving [Lundskog] . . . to come over and talk to him." At 5:27:21, barely a minute after Gordon's gesture to Lundskog, the store's surveillance camera shows Lundskog walking north in front of the 7–Eleven—the direction of Gordon's travel. This is the last time Lundskog appears on the surveillance tape. Lundskog's body was later found just behind the 7–Eleven, near the northwest corner of the building.

¶ 8 Another witness at trial, Gustavo Diaz–Hernandez, witnessed at least a portion of the attack on Lundskog. He testified that he was walking by the 7–Eleven when he heard noises that he eventually determined came from one person kicking another. Diaz–Hernandez observed the attack from various vantage points and distances. He watched the attacker repeatedly kick Lundskog before ceasing the attack and entering the 7–Eleven store from the front. The front of the store was well-lit. According to Diaz–Hernandez, the attacker was a muscular African–American man with short hair wearing a loose T-shirt, baggy shorts, and white tennis shoes. Diaz–Hernandez's description of the attacker's clothing matched Mellen's description of Gordon.

¶ 9 Diaz–Hernandez continued observing the attacker, who left the 7–Eleven store when another car pulled up. The attacker went to that car, put some bags inside, returned to Lundskog and kicked him again, and then walked away from the area alongside the car. Diaz–Hernandez's observations of the attacker match quite well with Gordon's actions as recorded on videotape by the store's surveillance camera.

¶ 10 Gordon first appeared on the store's video at 5:20:50 a.m. when he entered the store from the north. While in the store, Gordon used the telephone before briefly departing to the north, passing Lundskog in the doorway. Gordon then reentered the store at 5:25:45 a.m. before again departing and heading north barely fifteen seconds later. According to Mellen's testimony, he saw Gordon beckon toward Lundskog at 5:26:08–:09 a.m. Lundskog is seen crossing in front of the store in Gordon's direction just over one minute later. Gordon reentered the 7–Eleven from the north at 5:31:17 a.m. and returned to the telephone. One car pulled into the parking lot and its occupant entered the store. Then, another car pulled into the parking lot at 5:32:01 a.m., whereupon Gordon left the store heading north. Neither Gordon nor Lundskog is seen again on the store's surveillance tape.

■ ¶ 11 Given the accounts presented at trial by both Diaz–Hernandez and Mellen, and the videotape evidence from the store, the trial court's verdict is not against the clear weight of the evidence; rather, it is amply supported by that evidence. Gordon

encountered Lundskog at the store that morning. This fact is clearly evidenced both by their passing one another in the doorway and Mellen's observation of Gordon's beckoning motion toward Lundskog. Further, the videotape evidence showing Lundskog heading toward the north shortly after Gordon's actions reasonably supports the conclusion that Lundskog responded to Gordon's summoning. Nearly four full minutes after Lundskog disappeared from the view of the surveillance camera, Gordon reentered the store from the north before again leaving as a car pulled into the parking lot, as described by Diaz–Hernandez. Any discrepancies in Diaz–Hernandez's testimony are minor compared to the accuracy of his observations.

¶ 12 Gordon argues that Diaz–Hernandez's identification of Gordon as the attacker is suspect because of the poor lighting conditions in the area where Lundskog was attacked and Diaz–Hernandez's inconsistent preliminary hearing testimony regarding the identity of the attacker. Although Diaz–Hernandez failed to positively identify Gordon as the attacker in a photo line-up and at the preliminary hearing, he did positively identify Gordon at trial. While his positive identification of Gordon at trial was inconsistent with previous failures to positively identify the attacker, it is evident that Diaz–Hernandez had ample opportunity to observe the attacker given the lighting at the front of the store. Thus, apart from any positive identification, Diaz–Hernandez's descriptions of the attacker's clothing and physical appearance were entitled to considerable weight at trial. The trial court's conclusion that Gordon was the attacker is not against the clear weight of the evidence.

¶ 13 Likewise, Gordon argues that the timeline of the attack as Diaz–Hernandez witnessed it does not match Gordon's actions as captured on the surveillance video. Gordon argues that he left the area upon leaving the store at 5:32 a.m. and that Diaz–Hernandez was not in the area to witness the attack until 5:35 or 5:36 a.m. While Diaz–Hernandez did testify that he lived about five minutes from the 7–Eleven on foot and that he left his home at 5:30 that morning, those times were clearly estimates. Given that Diaz–

Hernandez's times were approximations and that no foundational evidence was presented to establish the accuracy of the surveillance camera clock, the few minutes discrepancy between Diaz–Hernandez's testimony and the surveillance video are insufficient to cast doubt on the verdict.

¶ 14 Ample evidence supports Gordon's conviction. He was seen at the scene of the murder very close to the time it occurred and he interacted with Lundskog. His physical description and the clothing he wore that day match the description of the attacker given by Diaz–Hernandez, the only witness to the attack. Gordon's actions caught on the 7–Eleven surveillance tape also closely match Diaz–Hernandez's account of the attacker's actions. Given the ample evidence supporting Gordon's conviction, we must affirm the verdict of the trial court.

## CONCLUSION

¶ 15 The only issue at trial was the identity of the attacker and the only witness to the attack described an attacker who matched Gordon's physical description and was wearing clothing similar to that worn by Gordon that morning. Another witness saw Gordon and Lundskog interact shortly before the murder. We affirm the trial court's verdict because it was well-supported by the evidence offered at trial.

¶ 16 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice WILKINS' opinion.