2008 UT 75

**STATE of Utah, Plaintiff and Appellee,**

v.

**Ashlee Marie BRIGGS, Defendant and Appellant.**

No. 20070186.

Supreme Court of Utah.

Oct. 31, 2008.

Rehearing Denied Oct. 31, 2008.

Mark L. Shurtleff, Att'y Gen., Kenneth A. Bronston, Asst. Att'y Gen., Salt Lake City, Craig C. Halls, Monticello, for plaintiff.

William L. Schultz, Monticello, for defendant.

## AMENDED OPINION *

### On Certification from the Utah Court of Appeals

DURHAM, Chief Justice:

¶ 1 The trial court, after a bench trial, convicted defendant Ashlee Briggs of possession with intent to distribute, a tax stamp violation, and possession of drug paraphernalia. She challenges the convictions, arguing insufficiency of the evidence. Because we do not find that the trial court's decision was against the clear weight of the evidence, we affirm.

## BACKGROUND

¶ 2 In October 2006, Ashlee Briggs was arrested while returning from a trip to Phoenix with Antonio Martinez. Briggs and Martinez had met each other through a mutual friend, and Martinez had offered to pay Briggs $200 to drive him to Phoenix in a rental car because he did not have a driver's license. Martinez testified at trial that he told Briggs that the trip was to visit his mother and to "pick up some weed." Briggs denied this at trial; she testified that Martinez never told her about the drugs, and she did not think that the purpose of the trip was to obtain drugs.[1] However, Briggs testified that she knew before the trip that Martinez had drug connections, and she admitted that she knew she would only be paid for driving if they were able to pick up the drugs.[2]

¶ 3 After driving to Phoenix, the two stayed in a hotel room paid for by Martinez. During this time, Martinez came and went from the hotel, but Briggs did not leave the hotel for their entire stay. Briggs spoke frequently with her boyfriend, Johnathon Simpson, while she was at the hotel, and she asked Simpson to come get her because she had grown uncomfortable with Martinez.[3] Simpson denied her request, and Briggs' cell phone service was cut off while she was in Phoenix. Briggs decided to make the trip home with Martinez.

¶ 4 On the morning of October 23, before they left Phoenix, Briggs and Martinez met Martinez's friend, Courtney, and Martinez purchased a package of marijuana. The parties' recollections differ as to where the purchase took place and what the circumstances of the purchase were, but Martinez testified that Briggs was not involved in the purchase. Nonetheless, both Martinez and Briggs testified that a sample of the marijuana was passed around while they were still in Phoenix, and the trial court found that Briggs knew at this time that the item to be transported was a brick of marijuana.

¶ 5 On their return trip to Grand Junction, Officer Workman pulled Briggs and Martinez over near Blanding, Utah, because he did not see any license plates on their vehicle. After routine questioning and inspection of the rental agreement for the vehicle, Officer Workman discovered that neither Briggs nor Martinez was listed as a driver on the rental agreement. Officer Workman questioned Briggs about the vehicle and eventually told Briggs and Martinez that they were free to go. However, before they left, Officer Workman asked if he could ask them some more questions and inquired if they had "Any marijuana? Any cocaine? Any methamphetamine?" Briggs and Martinez responded that they did not and consented to a search of their vehicle.

---

* The Court has removed footnote number 5 from the original opinion.

1. The arresting officer also testified that Briggs told him she was being paid to drive Martinez to Phoenix and she assumed the trip was being made for drugs. However, Briggs testified that she did not believe the trip was being made for drugs, and she denied ever telling the officer that was the purpose of their trip.

2. Briggs eventually denied this admission, but the trial court found that "it impaired the defendant's credibility that her lawyer had to keep workin' at her to finally get her to back off on her earlier admission that she knew she was on a drug run."

3. Martinez had made sexual advances.

¶ 6 Officer Workman's search uncovered a small green pipe that belonged to Martinez inside of Briggs' bag. The pipe had evidence of having been used to smoke marijuana. Officer Workman also discovered 2.2 pounds of marijuana in a drawer underneath the front passenger seat and $2,640 in a ziplock bag in the sunglass holder of the vehicle. Following these discoveries, Briggs and Martinez were placed under arrest and taken to the police station for questioning.

¶ 7 At trial, Officer Workman testified that when questioned, Briggs admitted that she assumed the trip to Phoenix was being made for drugs and that Martinez had paid for their hotel room with money that was for drugs.[4] In her own testimony, Briggs admitted that she knew that the pipe in her bag was used for smoking marijuana, that Martinez had been smoking marijuana on the trip, and that she was trying to hide the pipe when she put it in her bag. Briggs also testified that she had used marijuana in the past, although she had not smoked it for six months. When the officers questioned Martinez about the marijuana, he told them that he had intended to deliver half of the marijuana to a friend in Grand Junction. Martinez also testified at trial that he told the officers that Briggs had nothing to do with the marijuana but that she did know it was in the vehicle.

¶ 8 The trial court found that given the circumstances surrounding the trip, it was unreasonable that Briggs did not know that the purpose of the trip was to get drugs. The court also found that Briggs knew in Phoenix about the marijuana and, based on her experience with marijuana, she knew that the quantity of marijuana was suitable for commercial sale and not just personal use. Given these findings, the trial court found that Briggs knowingly and intentionally helped Martinez and found her guilty of possession of a controlled substance with intent to distribute, a tax stamp violation, and possession of drug paraphernalia.

¶ 9 Briggs now appeals her conviction on the grounds that there was insufficient evidence to convict her on any of the three counts against her. Briggs filed a timely notice of appeal with the court of appeals. The court of appeals subsequently certified the case for transfer to this court pursuant to rule 43 of the Utah Rules of Appellate Procedure. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(b) (2008).

## STANDARD OF REVIEW

¶ 10 Because we are asked to review the results of a bench trial for sufficiency of evidence, we will only reverse if the trial court's findings were clearly erroneous. "When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is 'against the clear weight of the evidence, or if [we] otherwise reach[ ] a definite and firm conviction that a mistake has been made.'" *State v. Gordon*, 2004 UT 2, ¶ 5, 84 P.3d 1167 (quoting *State v. Goodman*, 763 P.2d 786, 786–87 (Utah 1988) (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987))).

¶ 11 Additionally, "in those instances in which the trial court's findings include inferences drawn from the evidence, we will not take issue with those inferences unless the logic upon which their extrapolation from the evidence is based is so flawed as to render the inference clearly erroneous." *Glew v. Ohio Sav. Bank*, 2007 UT 56, ¶ 18, 181 P.3d 791 (citing *State v. Walker*, 743 P.2d at 193).

## DISCUSSION

¶ 12 At trial, the State based its case against Briggs in part on the theory of accomplice liability, and the trial court relied on this theory in convicting Briggs of all three counts.

### I. ACCOMPLICE LIABILITY

#### A. Intent Requirement Under Accomplice Liability

¶ 13 To show that a defendant is guilty under accomplice liability, the State must show that an individual acted with both the intent that the underlying offense be committed and the intent to aid the principal

---

4. At trial, Briggs denied making either of these statements.

actor in the offense. "Every person acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct." Utah Code Ann. § 76–2–202 (2003); *see also State v. Schreuder*, 726 P.2d 1215, 1220 (Utah 1986) ("Prior knowledge does not make a person an accomplice when that person does not have the mental state required and does not solicit, request, command, encourage, or intentionally aid in perpetration of the crime."). The criminal intent of a party may be inferred from circumstances such as " 'presence, companionship, and conduct before and after the offense....' " *Am. Fork City v. Rothe*, 2000 UT App 277, ¶ 7, 12 P.3d 108 (quoting *Watson v. State*, 214 Ga.App. 645, 448 S.E.2d 752, 753 (1994)).

¶ 14 An accomplice must therefore have the intent that the underlying offense be committed. *See State v. Comish*, 560 P.2d 1134, 1136 (Utah 1977) ("[A]n 'accomplice' is one who participates in a crime in such a way that he could be charged and tried for the same offense."). However, it is not necessary for the accomplice to have the same intent that the principal actor possessed as long as the accomplice intended that an offense be committed. *See State v. Alvarez*, 872 P.2d 450, 461 (Utah 1994) ("Party liability under section 76–2–202 does not require that the persons involved in the criminal conduct have the same mental state."). An accomplice will be held criminally responsible to the degree of his own mental state, not that of the principal. *See State v. Crick*, 675 P.2d 527, 534 (Utah 1983). This prevents an individual who is charged as an accomplice from escaping criminal liability by arguing that the principal actor had a lower intent or diminished capacity when the crime was committed. *Id.* Therefore, the first step in applying accomplice liability is to determine whether the individual charged as an accomplice had the intent that an underlying offense be committed.

¶ 15 Additionally, when prosecuting an accomplice for aiding in the commission of a crime, the State must show that the accomplice had the intent to aid. *See State v. Chaney*, 1999 UT App 309, ¶ 46, 989 P.2d 1091 ("We conclude that the placement of the word 'intentionally' directly before the word 'aids' evinces a clear legislative intent that 'intentionally' modify only that word."). An accomplice must intentionally aid in the commission of a crime to be held criminally liable. *See Schreuder*, 726 P.2d at 1220 ("Prior knowledge does not make a person an accomplice when that person does not ... intentionally aid in perpetration of the crime.").

¶ 16 Briggs correctly argues that the nature of accomplice liability makes it impossible for the State to charge an individual with accomplice liability standing alone. *See, e.g., State v. Gonzales*, 2002 UT App 256, ¶ 12, 56 P.3d 969. However, in this case, Briggs was neither charged nor found guilty under Utah Code section 76–2–202 alone. The record clearly indicates that three separate counts were brought against Briggs. At trial, the State relied upon accomplice liability only as a theory for convicting Briggs of the crimes included in the information, and not as a separate offense.

¶ 17 As an affirmative defense in the trial court, Briggs asserted that she intended to voluntarily terminate her involvement with Martinez, and therefore should not be subject to accomplice liability. Voluntary termination requires that the individual "wholly deprive his prior efforts of effectiveness in the commission." Utah Code Ann. § 76–2–307(2) (2006). Although the record does show that Briggs was uncomfortable with her situation while in Phoenix, there is nothing in the record to show that she did anything to deprive her prior efforts of their effectiveness in aiding Martinez. Instead, Briggs further facilitated Martinez's commission of the offense of possession with intent to distribute by driving when they left Phoenix. Briggs' subjective desire to find another way of returning to Grand Junction and her request to her boyfriend to pick her up were insufficient to show that she voluntarily terminated her role in possessing the marijuana.

### B. Constructive Possession Is Not Necessary Under Accomplice Liability

¶ 18 Briggs argues that it is necessary for the State to prove constructive possession before she can be convicted as an accomplice to a crime of possession. The State has commonly relied on the theory of constructive possession in cases where an accomplice is not in physical possession of contraband. *See State v. Layman,* 1999 UT 79, ¶¶ 13–15, 985 P.2d 911; *State v. Fox,* 709 P.2d 316, 318–19 (Utah 1985); *State v. Anderton,* 668 P.2d 1258, 1263–64 (Utah 1983) (Durham, J., concurring); *State v. Carlson,* 635 P.2d 72, 74 (Utah 1981).[5] But constructive possession is not the only theory under which an accomplice may be found guilty of possession without actually possessing the contraband. *See Commonwealth v. Robinson,* 43 Mass.App.Ct. 257, 682 N.E.2d 903, 906 (1997) ("The theories of constructive possession and joint venture are, however, alternative theories with which to connect an accused to the crime.").

¶ 19 Courts in other jurisdictions have repeatedly found that it is not necessary for the State to prove actual or constructive possession when the State's case is founded upon a theory of accomplice liability. *See United States v. Paige,* 470 F.3d 603, 609 (6th Cir.2006) ("It is not necessary for aiding and abetting, however, that the government prove that the defendant actually or constructively possessed the cocaine."); *United States v. Garcia,* 242 F.3d 593, 596 (5th Cir. 2001) ("A Defendant 'need not have actual or constructive possession of the drugs to be guilty of aiding and abetting possession with intent to distribute.'" (quoting *United States v. Williams,* 985 F.2d 749, 753 (5th Cir. 1993))); *see also United States v. Wesson,* 889 F.2d 134, 134–35 (7th Cir.1989); *United*

States v. Fischel, 686 F.2d 1082, 1087 (5th Cir.1982); *Robinson,* 682 N.E.2d at 906. *See generally* J.A. Bryant, Jr., Annotation, *Offense of Aiding and Abetting Illegal Possession of Drugs or Narcotics,* 47 A.L.R.3d 1239 (1973).

¶ 20 If we were to hold that it is necessary for an accomplice to be in actual possession of the contraband before accomplice liability could be established, the State could charge someone as an accomplice only when he or she had acted as a principal. Accomplice liability would cease to have any independent function. Since Briggs was convicted as an accomplice to Martinez, and not for being in constructive possession of the marijuana, it is not necessary to determine whether Briggs had constructive possession.

## II. POSSESSION WITH INTENT TO DISTRIBUTE

¶ 21 The trial court found Briggs guilty of possession with intent to distribute. "[I]t is unlawful for any person to knowingly and intentionally ... possess a controlled or counterfeit substance with intent to distribute...." Utah Code Ann. § 58–37–8(1)(a)(iii) (2007). To convict someone of possession with intent to distribute, the State must show "(1) that defendant knowingly and intentionally possessed a controlled substance, and (2) that defendant intended to distribute the controlled substance to another." *State v. Fox,* 709 P.2d 316, 318 (Utah 1985) (citing Utah Code Ann. § 58–37–8(1)(a)(ii) (1953)).

¶ 22 Because Briggs was not personally in possession of the marijuana, the trial court relied on the State's theory of accomplice liability. As noted above, to properly convict Briggs as an accomplice, the State was required to show that the she had both "the mental state required for the commission of

---

**5.** The State's reliance on constructive possession in these cases may be a result of the treatment afforded to constructive possession in the definition of possession in Utah Code section 58–37–2(1)(ii) (2007):

> For a person to be a possessor or user of a controlled substance, it is not required that he be shown to have individually possessed [the substance] ... it is sufficient if it is shown that the person jointly participated with one or more persons in the use, possession, or control

of any substances with knowledge that the activity was occurring, or the controlled substance is found in a place or under circumstances indicating that the person had the ability and the intent to exercise dominion and control over it.

This definition does not, however, preclude the possibility of accomplice liability being applied in cases dealing with possession, including those where constructive possession might not exist.

an offense" and "intentionally aid[ed] another person to engage in conduct which constitutes an offense." Utah Code Ann. § 76–2–202 (2003).

¶ 23 As to the element of possession, the record reveals that Briggs admitted that she knew about Martinez's drug connections prior to the trip, that she did not believe she would be paid for driving Martinez if they did not get the drugs, and that she knew in Phoenix that the package they were transporting contained marijuana. Given these admissions, it was not clearly erroneous for the trial court to find that Briggs had the intent that the underlying offense, Martinez's possession of the marijuana, occur. Additionally, Briggs' action in driving Martinez to and from Phoenix shows that Briggs intentionally aided Martinez in his possession of the marijuana.

■ ¶ 24 The intent regarding possession for distribution was shown in the trial court's finding that Briggs' past experience with marijuana provided a sufficient basis from which the trial court could infer that Briggs knew the marijuana was for distribution because the quantity in the package was too much for personal use. The trial court's inference is reasonable. "Where one possesses a controlled substance in a quantity too large for personal consumption, the trier of fact can infer that the possessor had an intent to distribute." *Fox*, 709 P.2d at 320 (citing *State v. Anderton*, 668 P.2d 1258, 1262 (Utah 1983)). In view of these findings, it was not clear error for the trial court to find that Briggs had the requisite intent and assisted Martinez's efforts to acquire and possess marijuana with intent to distribute. *See State v. Holgate*, 2000 UT 74, ¶ 21, 10 P.3d 346 (" 'It is well established that intent can be proven by circumstantial evidence.' " (quoting *State v. James*, 819 P.2d 781, 789 (Utah 1991))). Therefore, it was not clear error for the trial court to find that Briggs acted as an accomplice to Martinez's posses-

sion of the marijuana with intent to distribute.

¶ 25 Briggs raises the concern that applying accomplice liability in a case such as this could potentially leave bus drivers or airline pilots subject to accomplice liability for transporting someone who possesses drugs. This concern is unfounded. Accomplice liability requires that the accomplice both acts with the "mental state required for the commission of an offense," and "intentionally aids" in the commission of the offense. Utah Code Ann. § 76–2–202. A bus driver or airline pilot could not be found guilty as an accomplice without having the intent that the crime be committed and intentionally aiding in the commission of the crime. In this case, the trial court found that Briggs knew about Martinez's actions and intentions regarding the marijuana and that she acted knowingly and intentionally in aiding him in carrying out those actions. These facts clearly distinguish Briggs from a bus driver who unknowingly transports someone who possesses drugs or other contraband.

¶ 26 Because there was sufficient evidence to find that Briggs had the necessary intent and aided Martinez in possession with intent to distribute, we affirm her conviction of possession with intent to distribute.

### III. TAX STAMP VIOLATION

■ ¶ 27 Briggs was also convicted of failure to affix the proper tax stamps to the marijuana as required under Utah Code section 59–19–106 (2006). This statute holds that "any dealer" who fails to affix the proper tax stamps will be subject to pay the taxes required on the marijuana and will also be guilty of a third degree felony. *Id.*[6] For purposes of this statute, "dealer" is defined as "a person who, in violation of Utah law, . . . in any manner . . . transports, or imports into Utah or in any manner acquires or possesses more than 42 1/2 grams of mari[j]uana. . . ." *Id.* § 59–19–102(2).

6. Utah Code section 59–19–105(1) provides that dealers may purchase the required tax stamps from the tax commission. This section also protects the anonymity of anyone who purchases stamps by guaranteeing that "[a] dealer is not required to give his name, address, Social Security number, or other identifying information on the form," and that "[t]he commission or its employees may not reveal any facts contained in any report, form, or return required by this chapter or any information obtained from a dealer." Utah Code Ann. § 59–19–105(4)(a)–(b).

¶ 28 When an accomplice is found guilty of a crime, he or she is "criminally liable as a party for such conduct." *Id.* § 76–2–202 (2003). An accomplice is treated the same as a principal would be treated. *State v. Gonzales,* 2002 UT App 256, ¶ 12, 56 P.3d 969 ("It is well settled that accomplices incur the same liability as principals."). This principal liability brings Briggs within the broad definition of "dealer" as someone who "in any manner ... possesses more than 42 1/2 ounces of mari[j]uana." Utah Code Ann. § 59–19–102(2) (2006). Once Briggs falls within the definition of a dealer, she is liable for any failure to affix the proper tax stamps to the marijuana, and she can be charged with violating the statute.

¶ 29 Because Briggs was convicted as an accomplice to possession with intent to distribute, it is not necessary for the State to show that she had constructive possession of the marijuana. As explained above, constructive possession presents one option that the State may rely upon when prosecuting individuals who aid in the possession of illegal drugs, but it is not the only option available. In this case, the record clearly indicates that Martinez made no effort to obtain the necessary tax stamps, and no stamps were affixed to the marijuana when Officer Workman discovered it in the vehicle. As we have already discussed, the trial court found that Briggs acted knowingly and intentionally in aiding Martinez in possession with intent to distribute. For these reasons, we find that there was sufficient evidence for the trial court to find Briggs guilty of failure to affix the proper tax stamps.

## IV. POSSESSION OF DRUG PARAPHERNALIA

¶ 30 Briggs was also convicted as an accomplice to Martinez's possession of drug paraphernalia. "It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to ... inhale or otherwise introduce a controlled substance into the human body...." Utah Code Ann. § 58–37a–5(1) (2007).

¶ 31 Briggs does not dispute that Martinez used the pipe to smoke marijuana during the trip, that the pipe was in her possession at the time of the search, or that the pipe is drug paraphernalia. Nevertheless, Briggs argues that there was insufficient evidence to convict her on this count because she did not have the intent to use the pipe herself. The trial court agreed and found that she did not have the intent to use the pipe, but still found her guilty for aiding Martinez in his possession of drug paraphernalia.

¶ 32 Briggs was convicted as an accomplice to Martinez's possession of the pipe, not as a principal. Therefore, it is not necessary to show that Briggs intended to use the pipe herself. For Briggs to be convicted as an accomplice, it is only necessary for the State to show that she intended that Martinez have possession of the pipe and that she intentionally aided Martinez in his possession and future use of the drug paraphernalia. Utah Code Ann. § 76–2–202 (2003).

¶ 33 At trial, Martinez admitted that the pipe belonged to him, and Briggs admitted that Martinez had used the pipe to smoke marijuana while they were traveling together. Based upon this testimony, it is clear that Martinez possessed the pipe, he had used the pipe, and he had the intent to use the pipe in the future. The record shows that Briggs placed the pipe in her bag when Martinez left the vehicle to speak with Officer Workman, and she admitted that she did so in an effort to conceal the pipe. Considering this evidence, the trial court found that Briggs' attempt to conceal the pipe was aiding Martinez in his possession of the pipe. Therefore, sufficient evidence did exist to convict Briggs as an accomplice to possession of drug paraphernalia.

## CONCLUSION

¶ 34 We conclude that it was not clearly erroneous for the trial court to convict Briggs on all three counts because there was sufficient evidence to allow the court to find that she acted as an accomplice. It is not necessary for the State to show actual or constructive possession when prosecuting an individual as an accomplice to possession of illegal substances or drug paraphernalia. When an individual is found guilty as an accomplice, he or she is criminally liable in

the same way that a principal actor would be. Affirmed.

¶ 35 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Judge McHUGH concur in Chief Justice DURHAM'S opinion.

¶ 36 Justice NEHRING does not participate herein; Court of Appeals Judge CAROLYN B. McHUGH sat.