IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20110012-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (August 16, 2012) |
| Mark Scott Titus, | ) | |
| | ) | 2012 UT App 231 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 081905856
The Honorable Vernice Trease

Attorneys:    Joan C. Watt and Peter A. Daines, Salt Lake City, for Appellant
              Mark L. Shurtleff and Brett J. DelPorto, Salt Lake City, for Appellee

-----

Before Judges Voros, Orme, and Thorne.

VOROS, Associate Presiding Judge:

¶1     Defendant Mark Scott Titus was convicted in a bench trial of two counts of
lewdness involving a child, a class A misdemeanor offense under Utah Code section 76-
9-702.5.  *See* Utah Code Ann. § 76-9-702.5 (2008).  On appeal, he contends that the
evidence was insufficient to support the trial court's judgment.  In addition, he
challenges the trial court's findings as inadequate.  We affirm.

I. Sufficiency of Evidence

¶2     Titus first contends that the evidence was insufficient to support his convictions. "Because we are asked to review the results of a bench trial for sufficiency of evidence, we will only reverse if the trial court's findings were clearly erroneous." *State v. Briggs*, 2008 UT 75, ¶ 10, 197 P.3d 628. "When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is 'against the clear weight of the evidence, or if [we] otherwise reach[] a definite and firm conviction that a mistake has been made.'" *State v. Gordon*, 2004 UT 2, ¶ 5, 84 P.3d 1167 (quoting *State v. Goodman*, 763 P.2d 786, 786–87 (Utah 1988) (alterations in original)). "Additionally, 'in those instances in which the trial court's findings include inferences drawn from the evidence, we will not take issue with those inferences unless the logic upon which their extrapolation from the evidence is based is so flawed as to render the inference clearly erroneous.'" *Briggs*, 2008 UT 75, ¶ 11 (quoting *Glew v. Ohio Sav. Bank*, 2007 UT 56, ¶ 18, 181 P.3d 791).

¶3     Titus was convicted of two counts of lewdness involving a child in a private place.

> A person is guilty of lewdness involving a child if the person . . . does any of the following to, or in the presence of a child who is under 14 years of age:
> . . .
>   (b) exposes his or her genitals, the female breast below the top of the areola, the buttocks, the anus, or the pubic area:
>       (i) in a public place; or
>       (ii) in a private place:
>           (A) under circumstances the person should know will likely cause affront or alarm; or
>           (B) with the intent to arouse or gratify the sexual desire of the actor or the child . . . .

Utah Code Ann. § 76-9-702.5(1). Here, the undisputed evidence shows that Titus exposed his genitals in the presence of boys under fourteen years of age in a private place, his own home. The State does not contend that he did so with the intent to arouse or gratify anyone's sexual desire. The point of contention is whether he did so under circumstances that he should have known would likely cause affront or alarm.

¶4     Two friends of Titus's son testified at trial.[1]  They were eight or nine years old at the time of the offense.  The first boy testified that he would hang out at Titus's house and that Titus "would walk around the house naked, and tell [him] to take [his] clothes off."  One time Titus was on the couch watching a TV program showing naked men and women having sex.[2]  Titus said, "If you want to watch this you have to take your clothes off."  The boy testified, "I went behind the couch and got naked, and then I went and sat on the couch and put a pillow on me."  The boy was "kind of" scared, "not too much," just "mostly uncomfortable"; but, he testified, "I didn't want [Titus] to come over and take my clothes off or come touch me."[3]

¶5     The other friend testified that he lived down the street from Titus.  Asked whether anything happened at Titus's house to make him feel uncomfortable, the boy responded, "They would turn on porn and we would watch it every time."[4]  Asked to explain what he meant by "porn," the boy responded that men and women were "making love" on TV.  "Mostly every time" this happened, Titus would be sitting on the couch naked.  The boy was also undressed.  He could not recall Titus saying anything to him before he undressed; "it just happened, I guess," he testified.

¶6     Titus contends that "[t]he trial court's findings and the evidence fail to support that Mr. Titus was nude under circumstances that he should have known would likely cause affront or alarm."  Titus argues that he "did not sexualize his nudity," but that "he dealt with it as a matter of fact."  For example, he did not touch himself.  One boy, he notes, "did not even claim to be uncomfortable" with the nudity.  The other did not convey his discomfort to Titus.  Titus argues that he consequently "had no reason to know that his nudity in the home would likely cause affront or alarm . . . ."  Thus, he asserts, his conviction "is based solely on inferences that give rise to only remote or speculative possibilities of guilt."  *State v. Brown*, 948 P.2d 337, 344 (Utah 1997).

¶7     Titus's argument is not without force:  the State agrees "that people are entitled to be nude in the privacy of their own homes and that there may even be occasions

---

1. Titus's minor son also testified.

2. Titus's son testified that he saw "Like the boy's private area."

3. The State did not allege that any touching occurred.

4. Although Titus was originally charged with contributing to the delinquency of a minor based on this allegation, that count was later dropped.

when adults can be nude in the presence of children without committing a crime." In addition, the facts of this case are markedly less egregious than, for example, those in *Roosevelt City v. Anderson*, 2008 UT App 464U (mem.), another case involving exposure in front of children. In *Roosevelt* we wrote, "It should seem obvious that exposing one's genitals" and touching women's exposed breasts "would likely cause affront or alarm when done a few feet from three children ages six through eleven." *Id.* at para. 6 (omissions in original).

¶8 Nevertheless, we cannot agree with Titus that he "did not sexualize his nudity." He exposed himself while viewing sexually-oriented material on television and while the boys were themselves undressed. One of the boys had no explanation for his nakedness; the other testified that Titus insisted upon it as a condition of the boy's watching the TV program. These troubling details distinguish this case from the more innocuous situations to which Titus compares it, such as male nudity in locker room showers, *see Jenkins v. Commonwealth*, 308 S.W.3d 704, 713–14 (Ky. 2010) (reversing an indecent exposure conviction where defendant showered in the same locker room shower stall with two small boys after swimming, absent "evidence that the removal of Jenkins' swimming trunks had any effect on either of them").

¶9 Furthermore, the trial court found that the boys' testimony "was credible" and that "there was sufficient consistency between the testimony of the witnesses, specifically the three children, in terms of the elements or the evidence that satisfies the elements of the crime to find that Mr. Titus is guilty" of lewdness involving a child. We defer to the trial court's assessment of witness credibility. *See In re S.T.*, 928 P.2d 393, 399 (Utah Ct. App. 1996) ("[A] trial court is . . . not required to explain why it found certain witnesses less credible or why some testimony was given less weight or considered irrelevant.").

¶10 Thus, on balance, we do not agree with Titus that the trial court's judgment that he should have known his conduct would likely cause affront or alarm was "against the clear weight of the evidence," nor have we reached "a definite and firm conviction that a mistake has been made." *State v. Briggs*, 2008 UT 75, ¶ 10, 197 P.3d 628 (citations and internal quotation marks omitted). We therefore reject the sufficiency challenge.

## II. Adequacy of Findings

¶11 Titus also contends that the trial court's findings were inadequate to support the judgment, and he urges this court to remand the case to the trial court for further

findings.[5]  However, "to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main Street v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (alteration in original) (citations and internal quotations marks omitted).  Titus did not object to the trial court's oral findings below, even when the trial judge queried whether either party wanted "more specific information regarding [the findings]."  He thus failed to preserve this claim in the trial court.

¶12    Anticipating this obstacle to his appellate claim, Titus suggests two reasons why the claim is properly before us.  First, he contends that "a defendant does not waive his right to adequate trial court findings unless he affirmatively and expressly relieves the trial court of its duty . . . ."  In support, he relies on rule 52(a) of the Utah Rules of Civil Procedure and a 1993 decision from this court.  *See* Utah R. Civ. P. 52(a) (2009) ("Requests for findings are not necessary for purposes of review."); *Potter v. Potter*, 845 P.2d 272, 274 (Utah Ct. App. 1993) (rejecting wife's argument that husband "should not be allowed to complain about the property distribution because his trial counsel failed to request further findings when the trial court asked if any were desired"(citing Utah R. Civ. P. 52(a))).

¶13    Titus's point is not well taken.  The Utah Supreme Court addressed this very issue in *In re K.F.*, 2009 UT 4, 201 P.3d 985.  The court explained, "Clearly, rule 52 addresses *sufficiency of the evidence* challenges.  In *438 Main Street* [*v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801], however, we addressed challenges to the *adequacy of the detail in the findings of fact*."  *K.F.,* 2009 UT 4, ¶ 60.  In *438 Main Street*, the supreme court held that an appellant who, like Titus, failed to specifically object to findings in the trial court "waived any argument regarding whether the district court's findings of fact were sufficiently detailed."  *See 438 Main Street*, 2004 UT 72, ¶ 56.

¶14    Titus also claims plain error.  He contends that the trial court committed plain error by not making findings addressing whether Titus "should have known that nudity would likely cause affront or alarm" to his son's two friends.  To demonstrate plain error, an appellant must establish that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error,

---

5. We address the merits of this claim notwithstanding the State's failure to brief it.  *But see Broderick v. Apartment Mgmt Consultants, LLC*, 2012 UT 17, 279 P.3d 391 (reversing without reaching the merits where appellee failed to directly address appellants' arguments).

there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993).

¶15 Assuming for purposes of argument only that the trial court committed error and that the error was prejudicial, we do not agree that the claimed error was obvious. The trial court twice offered to elucidate its reasoning "if either party wish[ed] [the court] to explain [it]." Defense counsel did not request more detail, and appellate counsel does not challenge that omission as ineffective assistance of counsel. On this record, we cannot say that any error in this regard "should have been obvious to the trial court." *See id*. at 1208.

¶16 Moreover, "in cases in which factual issues are presented to and must be resolved by the trial court but no findings of fact appear in the record, we 'assume that the trier of facts found them in accord with its decision, and we affirm the decision if from the evidence it would be reasonable to find facts to support it.'" *State v. Ramirez*, 817 P.2d 774, 787–88 (Utah 1991) (quoting *Mower v. McCarthy*, 122 Utah 1, 245 P.2d 224, 226 (1952)). This is such a case. Given the trial evidence summarized above, we are confident we can trace "the steps by which the judge reached . . . her conclusions." *See 438 Main Street*, 2004 UT 72, ¶ 54.

¶17 Affirmed.


_____
J. Frederic Voros Jr.,
Associate Presiding Judge


-----

¶18 WE CONCUR:


_____
Gregory K. Orme, Judge


_____
William A. Thorne Jr., Judge