2014 UT App 76

**STATE of Utah, Plaintiff and Appellee,**

v.

**Idrees Adam IDREES, Defendant and Appellant.**

No. 20120265–CA.

Court of Appeals of Utah.

April 10, 2014.

Peter A. Daines and Nathalie S. Skibine, Attorneys for Appellant.

Sean D. Reyes and Ryan D. Tenney, Attorneys for Appellee.

Judge GREGORY K. ORME authored this Opinion, in which Judges MICHELE M. CHRISTIANSEN and JOHN A. PEARCE concurred.

ORME, Judge:

¶ 1 Following a jury trial, Defendant Idrees Adam Idrees was convicted of being an accomplice to murder, a first degree felony, *see* Utah Code Ann. § 76–5–203 (Lexis-Nexis 2012), and possession of a firearm by a restricted person, a second degree felony, *see id.* § 76–10–503(2)(a). Defendant appeals only the murder conviction, arguing that there was insufficient evidence to convict him and that he received ineffective assistance from his trial counsel. We affirm.

## BACKGROUND [1]

¶ 2 During a party on January 20, 2012, Defendant and Akol Joker got in a fight with

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict

the victim. At some point, both Defendant and Joker called the victim a "snitch" and a "bitch." Two nights later, Joker and Defendant met up with the victim again. The two men had a gun that night, and both of them carried it at various times. While again confronting the victim about being a snitch, Joker pointed the gun at the victim and pulled the trigger. The gun did not go off, and Joker handed it to Defendant while complaining about the malfunction. Defendant fixed the gun but did not immediately give it back to Joker. Witnesses testified that at some point that night, Defendant showed the victim the gun, which he had tucked into his waistband, and mimicked the sound of gunfire while pointing his finger at the victim.

¶ 3 Later, a group of nine people, including Defendant, Joker, and the victim, all drove away in an SUV. Joker again started arguing with the victim about being a snitch. As Joker became increasingly enraged, everyone in the car, including Defendant, tried to pacify him. Defendant repeatedly told Joker to "chill out" and attempted to reason with him in an effort to diffuse the situation. Despite these efforts, Joker continued to get angrier and repeatedly asked Defendant, who was sitting in the front seat at the time, to give him the gun. Defendant told Joker "no" and "not here" and told him to stop arguing. At some point, however, Joker did get the gun. Some witnesses testified that Defendant handed Joker the gun, while others testified that Joker grabbed the gun from the front seat where Defendant was sitting. Defendant then told Joker to "squash it." A few

seconds later, Joker turned around and shot the victim in the head.[2]

¶ 4 At Defendant's trial, the definition of "squash it" became an issue. The prosecution's primary witness, who was in the car during the murder, testified that "squash it" could have multiple meanings but that she understood Defendant's meaning to be to "get it over with" or "finish it." Defendant's trial counsel failed to introduce any evidence to rebut the State's key witness's characterization of "squash it" but did attempt to address it in closing arguments. Trial counsel stated:

> Quash it.[3] They get to choose their definition, but they admit there is two definitions.... They say quash it could mean to injure somebody. Or if you are from where I am from, I am from Houston, Texas. I spent some time in a poor part of town. Let me tell you what quash is. I can tell you what the definition of quash is. And let me give it to you. This is coming from me. Use your own definition of quash it.

At that point, the prosecution objected. The objection was overruled, and trial counsel continued to explain "quash it," arguing that it could mean to avoid a violent confrontation.[4]

¶ 5 The prosecution also focused on the phrase "squash it" during its closing argument:

> Akol Joker tells [Defendant], Give me your gun. [Defendant] says no. Akol Joker says, Give me your gun. He says no. Akol Joker says, Give me your gun. [De-

and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Bluff*, 2002 UT 66, ¶ 2, 52 P.3d 1210 (citations and internal quotation marks omitted).

2. Prior to Defendant's trial, Joker pled guilty to murdering the victim.

3. Defendant's trial counsel consistently referred to the phrase as "quash it" rather than "squash it."

4. Trial counsel credited the Harvard School of Public Health with coining the phrase "squash it" and with attempting to integrate it into "African–American street culture." *See Squash It!*, The Free Dictionary, http://medical-dictionary.thefreedictionary.com/squash+it (last visited

March 21, 2014). This explanation appears to be factually inaccurate. The Harvard School of Public Health does not claim to have coined the phrase but describes its "Squash It!" Campaign as building on a phrase already "used by inner-city youth," meaning to "walk away from confrontations ... without losing face." *See "Squash It!" Campaign*, Harvard School of Public Health, http://www.hsph.harvard.edu/chc/squash-it-campaign/ (last visited March 21, 2014). Furthermore, Defendant's rule 23B motion is accompanied by an affidavit from an expert witness who avers that the phrase has been in use for at least forty years and means to "stand down from a confrontation to avoid violence."

fendant] hands Akol Joker [Defendant's] gun that he has fixed and he says, Squash it.

Now, there are two definitions of squash. I am not choosing which definition to use. [The witness] is.... I don't think she consulted with whatever handbook or help definition that [Defendant's trial counsel] is referring to....

She says when they are in the car [Defendant] wasn't saying calm down, he instigated, it stirred things up.... She says she sees Joker reach up, and she hears [Defendant] say, Squash it, and as soon as that happens [she] is saying, I'm a girl. I'm a girl. I'm a girl. Don't shoot. And she is cowering now, because she knows what he meant when he said, Squash it.

¶ 6 After hearing all the evidence, the jury convicted Defendant of murder as an accomplice. Defendant appeals from that verdict.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Defendant argues that there was insufficient evidence to support his conviction. In considering an insufficiency of the evidence claim, "we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury." *State v. Shumway*, 2002 UT 124, ¶ 15, 63 P.3d 94. We will only reverse a jury verdict for insufficient evidence "when the evidence is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *Id.*

¶ 8 Defendant also argues that he received ineffective assistance from his trial counsel. Ineffective assistance of counsel claims, when raised for the first time on appeal, present questions of law. *See State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

## ANALYSIS

### I. Sufficiency of the Evidence

¶ 9 Defendant argues that the State failed to produce enough evidence to prove Defendant's guilt beyond a reasonable doubt. To hold a defendant criminally lia-ble for another person's conduct, the State must prove (1) that the defendant had the "mental state required" for the crime and (2) that the defendant "solicit[ed], request[ed], command[ed], encourag[ed], or intentionally aid[ed]" the person who committed the crime. *See* Utah Code Ann. § 76–2–202 (LexisNexis 2012). *See also State v. Briggs*, 2008 UT 75, ¶ 14, 197 P.3d 628 ("An accomplice must ... have the intent that the underlying offense be committed."). For murder, the requisite mental states include acting with "depraved indifference to human life" in a way that "creates a grave risk of death to another." *See* Utah Code Ann. § 76–5–203(2)(c). The jury heard evidence that Defendant attempted several times to dissuade Joker from killing the victim and that he tried to keep the gun away from Joker. But the jury also heard evidence that Defendant called the victim a snitch, threatened the victim, flashed the gun at the victim while pointing his finger at the victim and mimicking the sound of gunfire, fixed the gun for Joker, and later gave the gun back to Joker in the car just before Joker fired it at the victim.

¶ 10 It is not our role to "reassess credibility or reweigh the evidence." *State v. Workman*, 852 P.2d 981, 984 (Utah 1993). Reviewing "the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict," we conclude that "some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *See State v. Maestas*, 2012 UT 46, ¶ 177, 299 P.3d 892 (citations and internal quotation marks omitted).

### II. Ineffective Assistance of Counsel

¶ 11 Defendant also claims that his trial counsel was ineffective for failing to present expert testimony at trial on the appropriate interpretation of the phrase "squash it." To prevail on this claim, Defendant must show that his trial "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that Defendant "was

prejudiced thereby," *id.* at 702, 104 S.Ct. 2052.

¶ 12 To support his ineffectiveness claim, Defendant filed, through his current counsel, a commendably detailed and otherwise credible rule 23B motion asking us to remand for further findings. *See* Utah R.App. P. 23B. In the motion, Defendant presents nonspeculative facts, including affidavits from experts, which convincingly show that the settled meaning of "squash it" is "to resolve a situation without violence." Courts and lawyers typically exert considerable effort to discern the proper meaning of words in legislative enactments and contracts, and it seems no less important here to make similar efforts to ensure that a jury has the benefit of the true meaning of Defendant's words. *See, e.g., Smith v. United States,* 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (devoting entire opinion to ascertaining the meaning of the word "use"); James J. Brudney & Lawrence Baum, *Oasis or Mirage: The Supreme Court's Thirst for Dictionaries in the Rehnquist and Roberts Eras,* 55 Wm. & Mary L.Rev. 483, 483–84 (2013) (discussing the Supreme Court's reliance on dictionaries and noting that the increase in dictionary use "is linked to the rise of textualism and its intense focus on ordinary meaning"). Accordingly, the rule 23B motion's focus on the importance in this case of understanding the correct meaning of "squash it" was perceptive, and it is persuasive.

¶ 13 The State recognizes the potential significance of the evidence proffered in Defendant's rule 23B motion but argues that even if we assume that "squash it" can only mean to resolve a conflict without violence, it would not have changed the jury's verdict. We will assume then, for purposes of this appeal, that the phrase "squash it" can only mean to resolve a situation without violence. We further assume, for purposes of this appeal, that defense counsel was remiss in not doing more with this important information. Failing to introduce evidence about the meaning of the phrase "squash it" and then attempting to testify from personal experience during closing arguments about the meaning of "quash it" was not an objectively reasonable trial strategy. Nor could it have

been an objectively reasonable strategy, as the State attempts to argue, to intentionally exclude exculpatory evidence available from an expert witness about the meaning of a phrase for fear of opening the door to otherwise forbidden character evidence about Defendant. *See* Utah R. Evid. 404(a).

¶ 14 But even assuming that trial counsel's performance was objectively deficient, Defendant must also demonstrate that the deficient performance adversely affected the outcome of the trial. *See State v. Charles,* 2011 UT App 291, ¶ 28, 263 P.3d 469. And the United States Supreme Court stated in *Strickland* that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." 466 U.S. at 697, 104 S.Ct. 2052. As a result, we will simply assume the deficiency of trial counsel's performance and look to whether trial counsel's performance prejudiced Defendant.

¶ 15 "To demonstrate prejudice, a defendant must show that 'but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different.'" *Charles,* 2011 UT App 291, ¶ 28, 263 P.3d 469 (quoting *State v. Lee,* 2006 UT 5, ¶ 37, 128 P.3d 1179). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

¶ 16 In this case, Defendant has failed to show he was prejudiced by any deficiency in trial counsel's performance. The jury, which we have already concluded acted upon sufficient evidence, *see supra* ¶ 10, weighed and considered an abundance of exculpatory and inculpatory evidence. The jury heard testimony that Defendant repeatedly told Joker that he would not give him the gun and that Defendant tried to reason with Joker not to shoot. Despite all this, the jury still found Defendant guilty on the weight of the inculpatory evidence, such as Defendant's making threats, fixing the gun, and giving the gun to Joker. It is not reasonably probable that evidence of one more exculpatory protestation from Defendant would have had any effect upon the jury's final decision. The "evidentiary picture" and the inferences drawn therefrom would not have been signifi-

cantly different. *See Strickland,* 466 U.S. at 696, 104 S.Ct. 2052. Therefore, our confidence in the outcome is not undermined. However deficient trial counsel's performance may have been in this one respect, it did not prejudice Defendant.

## CONCLUSION

¶ 17 There was sufficient evidence before the jury to sustain Defendant's conviction. Even assuming Defendant's trial counsel performed deficiently in not doing more to establish the meaning of the phrase "squash it," Defendant has failed to demonstrate that he was prejudiced as a result. Accordingly, Defendant's conviction is affirmed.