2013 UT App 216

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
JOSHUA BINKERD,
Defendant and Appellant.

Opinion
No. 20100978-CA
Filed September 6, 2013

Fourth District, Heber Department
The Honorable Derek P. Pullan
No. 091500123

Corbin B. Gordon, Matthew A. Bartlett, and
John M. Webster, Attorneys for Appellant
John E. Swallow and Ryan D. Tenney, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.

ORME, Judge:

¶1     Defendant Joshua Binkerd appeals from a conviction for manslaughter, a second degree felony. *See* Utah Code Ann. § 76-5-205(2) (LexisNexis 2012).[1] We affirm.

## BACKGROUND

¶2     In 2008, Defendant was affiliated with a gang in Salt Lake City. Defendant was an "original gangster," which meant that "he

---

1. Because the provisions in effect at the relevant time do not differ in any way material to our analysis from the statutory provisions now in effect, we cite the current version of the Utah Code as a convenience to the reader.

was in the gang before anything else, and called the shots and basically told you what you needed to do." Chris Alvey "like[d] to think of" Defendant as his original gangster; as his "OG." Alvey acted as Defendant's "second-hand, his partner," and Alvey viewed Defendant as a "best friend . . . like an older brother."

¶3     The victim in this case periodically associated with Defendant's gang. She occasionally drove gang members to robberies and often used drugs with them. She had once been romantically involved with Defendant. By December 2008, however, the victim had come to be described within the gang as "their . . . redheaded snitch." Consequently, Defendant told fellow gang members that there was a "green light" on the victim. A "green light" usually meant that the target could be killed, but could also mean that gang members should "do some harm" or "some damage" to the target. Defendant told Alvey about the "green light" on the victim and told at least one of the gang members that there was an "SOS" on the victim, meaning "shoot on sight." Defendant told Alvey "there was only one way to take care of a snitch" and that was to "kill 'em." A few days before Christmas that year, Alvey was with Defendant in a parking lot, and Alvey displayed a gun. Defendant said that "they had some ratting ass bitch that they had to take care of."

¶4     On Christmas Eve, Defendant and Alvey confronted the victim in an apartment. After telling the victim that they knew that she was a "rat," Alvey pulled the gun, cocked it, and put it to the victim's head, and Defendant whispered into her ear that "she was going to die tonight." But then Defendant said, "Not here, not now," and "we're not doing this here."

¶5     Two days later, one of Defendant's fellow gang members found the victim with a tape recorder and a list of every phone number that the gang member had called that day. The gang member called Defendant to ask what he should do with the victim. Defendant told the gang member to bring her to him. Defendant then instructed Alvey to drive the victim up a canyon in a van and leave her there. As Alvey drove with the victim, the two smoked methamphetamine together. At some point during the

drive, Defendant called Alvey and told him, "Don't bring her back."

¶6     Alvey later said that if Defendant had not called him, he would have "left [the victim] on the side of the highway somewhere or up a dirt road or something." Instead, based on what he believed Defendant's instructions to be, Alvey pulled into a parking lot near a reservoir, told the victim to get out of the van, shot her four times, and left. A camper found the victim a short time later with several gunshot wounds. She died at a hospital several hours later.

¶7     On his way back, Alvey called Defendant to tell him that "it was done." When Alvey arrived back at the apartment where he and Defendant were staying, Alvey met with Defendant and several other gang members. He told the group that he had shot the victim. In recognition of his efforts, Defendant gave Alvey a blue bandana—a sign of respect within the gang—for "doing a good job" and "killing [the victim]," noting, "Murder doesn't happen every day." Defendant, having ordered that the gun Alvey used be destroyed, then fled from the apartment to a hotel. He was arrested a few days later.

¶8     In interviews with police following his arrest, Defendant repeatedly denied that he had told Alvey to kill the victim or that he had intended for him to do so. Defendant did, however, admit that he had taken Alvey "under [his] wing" and that Alvey was his "sidekick." He conceded that if he asked Alvey "to do something, he would." Defendant also admitted that he had told the victim that she would "get [herself] hurt" if she spoke with police. He told police that he knew that there was a "green light" on the victim, but claimed it meant that a person could "do whatever you want to do" to the victim. Defendant admitted that he and Alvey had confronted the victim in an apartment on Christmas Eve. He told police that he had told the victim, "I should beat the shit out of you right here, right now but you're lucky" because they were in a friend's apartment. Defendant admitted that Alvey had put a gun to the victim's head during the encounter and told her there was a "green light" on her. Defendant claimed that he "shook [his] head"

at Alvey, then said, "Do what you want to do. Do what the hell you want, dude."

¶9     Defendant admitted to police that he had a "gut feeling" that Alvey was going to kill the victim when he took her up the canyon. He also agreed that he "might have insinuated" that Alvey should kill the victim, despite denying that he intended for it to occur. Defendant told police that he "might have said something that did go into his mind along the lines of doing it." In response to an officer asking whether he believed himself to be innocent, Defendant responded, "No, I don't."

¶10     Under the theory that Defendant had acted as an accomplice to the murder of the victim, the State charged Defendant with one count of aggravated murder, *see* Utah Code Ann. § 76-5-202 (LexisNexis Supp. 2013), and in the alternative, one count of depraved indifference murder, *see id.* § 76-5-203(2)(c) (LexisNexis 2012). The information also included a dangerous weapon enhancement. *See id.* § 76-3-203.8.

¶11     Alvey was also arrested soon after the killing. He pled guilty to one count of aggravated murder. *See id.* § 76-5-202 (LexisNexis Supp. 2013). The State agreed not to seek the death penalty in exchange for his testimony against Defendant.

¶12     At his trial, Defendant claimed that he did not tell Alvey to kill the victim and never intended for him to do so. Defendant conceded that Alvey apparently believed that he had ordered the killing but argued that because Defendant did not act intentionally or knowingly, he did not have the requisite mental state to commit aggravated murder or depraved indifference murder.

¶13     Defendant moved to dismiss the charges following the close of evidence. He argued that the evidence failed to demonstrate that Defendant intended for the victim to be killed. Defendant contended that Alvey had testified that "the only thing that [Defendant] did to order, persuade, or assist him in the killing of [the victim] was to say be safe, and don't come back." He claimed that his statement was ambiguous at best and that "it is clear that

he never intended anyone to kill [the victim], if it's believed that he gave a green light at all." The State responded that in light of the "cumulative evidence," Defendant had

> primed Chris Alvey. He had him ready. In the good gang tradition, he was having someone else do his dirty work . . . . That is sufficient evidence on that to show that he [not only] aided, encouraged, assisted Chris Alvey in carrying out that murder but evidence . . . to show that that's what he wanted done, that that was his intent, to get rid of [the victim].

After hearing arguments from both parties, the trial court denied Defendant's motion to dismiss.

¶14 The trial court and counsel then discussed jury instructions. Before trial, the State had proposed that the jury be given an instruction on the lesser included offense of reckless manslaughter. The State withdrew that proposed instruction during the discussion following the denial of Defendant's motion to dismiss. The trial court responded by asking whether Defendant wanted the jury instructed on manslaughter. Defense counsel replied that he was not seeking an instruction for manslaughter, a second degree felony, *see* Utah Code Ann. § 76-5-205(2) (LexisNexis 2012), but wanted an instruction on negligent homicide, a class A misdemeanor, *see id.* § 76-5-206(2), "if that's available without including manslaughter." The defense had not previously submitted a written request for a negligent homicide instruction or a proposed jury instruction. The prosecution opposed that request, arguing that neither a manslaughter nor a negligent homicide instruction was warranted.

¶15 Defense counsel insisted on a negligent homicide instruction, conceding that Defendant may have been negligent in setting into action a series of events that culminated in the victim's demise. The court responded that defense counsel was admitting that the jury might conclude that Defendant "[o]ught to have been aware of the substantial and unjustified risk that [the victim]'s death" would result from his conduct. Defense counsel agreed,

stating that Defendant possibly "should have been more conscious of that and he was negligent in not being conscious of that, . . . yes."

¶16 The court then noted that the legal difference between reckless manslaughter and negligent homicide was only the extent of Defendant's awareness of the risk that Alvey might kill the victim. *Compare* Utah Code Ann. § 76-5-205(1) (LexisNexis 2012), *with id.* § 76-5-206(1). In response to the court questioning whether Defendant might have been aware of the risk, thereby supporting a manslaughter instruction as well, defense counsel replied, "I would think he really should have been aware of the risks, but I'm not asking for the manslaughter" instruction. While still opposing either instruction, the State argued that if the court granted the request for a negligent homicide instruction, the jury should, in fairness, also be instructed on manslaughter. The court noted that different standards apply when the State, rather than the defense, requests a lesser included offense instruction. The court then took the matter under advisement, stating that it would prepare the instructions that night and provide them to counsel the next morning so they would be "free to go through them" before the instructions were provided to the jury.

¶17 The next morning, the court stated that, pursuant to the request from Defendant, it would provide the jury with an instruction on negligent homicide. The court then articulated the test that applies when the State, rather than the defendant, requests an instruction for a lesser included offense. The court concluded that, after reviewing the law and the evidence, it believed a manslaughter instruction was also appropriate. The court then asked the State whether it intended to argue that Defendant was guilty as a principal or as an accomplice. The State responded that it would argue an accomplice liability theory. In response to the court asking the defense whether there was an objection to the instructions incorporating accomplice liability with the elements of manslaughter, defense counsel said, "No. . . . I think they should have to prove the additional elements" of accomplice liability.

¶18 The accomplice liability instruction provided to the jury read: "Every person, acting with [the] mental state required for the

commission of an offense who directly commits the offense, who solicits, requests, commands, encourages or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct." The manslaughter instruction informed the jury that "Manslaughter is a lesser included offense of Murder" and then listed the required elements, including that, to convict, the jury must find beyond a reasonable doubt that Defendant "Recklessly . . . Solicited or requested or commanded or encouraged or aided another person . . . To cause the death of another, to wit: [the victim]." The instruction for negligent homicide stated that "Negligent Homicide is a lesser included offense of Murder" and listed the elements as including that, to convict, the jury must find beyond a reasonable doubt that Defendant "Acting with criminal negligence . . . Solicited or requested or commanded or encouraged or aided another person . . . To cause the death of another, to wit: [the victim]."

¶19     The jury convicted Defendant of the manslaughter charge but acquitted him of both aggravated murder and murder. The jury also found that a dangerous weapon had been used in the offense and that Defendant knew that it had been used. *See* Utah Code Ann. § 76-3-203.8 (LexisNexis 2012). At sentencing, the court expressed its belief that it was required to add a minimum of one and a maximum of five years to Defendant's sentence as a result of the dangerous weapon enhancement. As a result, the court sentenced Defendant to a term of two to twenty years in prison, rather than the one to fifteen years required by the manslaughter statute. *See id.* §§ 76-5-205; 76-3-203(2).

¶20     Defendant filed a motion for a new trial, arguing that an individual cannot be convicted as an accomplice for a general intent crime such as reckless manslaughter. Defendant also argued that the trial court had incorrectly applied the dangerous weapon enhancement. The court rejected both claims. While it agreed that it had misinterpreted the dangerous weapon enhancement at sentencing when it concluded that it was required to add one to five years generally to Defendant's sentence, the court stated that any error was harmless because it would have imposed the same

sentence even if it had viewed the additional five years as discretionary. With regard to Defendant's underlying conviction, the court held that a defendant can be convicted as an accomplice to a general intent crime such as manslaughter. The court further held that even if it had erred, the error was invited by Defendant's request for an instruction on negligent homicide, a crime which, like manslaughter, does not require specific intent. Defendant appeals.

ISSUES AND STANDARDS OF REVIEW

¶21     Given the applicable statutory scheme, Defendant argues that he cannot be convicted as an accomplice to manslaughter. We review statutory interpretations for correctness, granting no deference to the trial court. *See Jeffs v. Stubbs*, 970 P.2d 1234, 1240 (Utah 1998). Defendant argues that it was plain error for the court to include the instruction on manslaughter, a general intent crime, as a lesser included offense of murder and aggravated murder, both specific intent crimes, under the theory of accomplice liability.

> In general, to establish the existence of plain error and to obtain appellate relief from an alleged error that was not properly objected to, the appellant must show the following: (i) An error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined.

*State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). The State contends that Defendant invited any error with regard to the manslaughter instruction by requesting the negligent homicide instruction. The doctrine of invited error bars review for plain error when the defendant "led the trial court to believe that there was nothing wrong with the instruction." *State v. Medina*, 738 P.2d 1021, 1023 (Utah 1987).

¶22 Defendant also contends that his defense counsel was ineffective in several regards. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶23 Defendant also argues that the court committed plain error in several other regards. "Generally, appellate courts will not consider an issue brought for the first time on appeal unless plain error is shown. When a party seeks review of an unpreserved issue, that party must articulate an appropriate justification for appellate review, such as plain error, in the party's opening brief." *State v. Crabb*, 2011 UT App 440, ¶ 3 n.1, 268 P.3d 193 (per curiam) (citation omitted).

ANALYSIS

I. It Was Not Legal Error for Defendant, as an Accomplice to Aggravated Murder, To Be Convicted of Manslaughter.

¶24 The accomplice liability statute provides that "[e]very person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct." Utah Code Ann. § 76-2-202 (LexisNexis 2012). Defendant argues that he "cannot be tried as an accomplice for a crime that is different from the conviction of the original actor." We disagree.

¶25 In *State v. Crick*, 675 P.2d 527 (Utah 1983), our Supreme Court explained that

> [a] defendant can be criminally responsible for an *act* committed by another, but the *degree of his responsibility* is determined by his own mental state in the acts that subject him to such responsibility, not by the mental state of the actor. This is clear from the language of § 76-2-202 . . . . Otherwise, a designing person could use a madman to kill another and mitigate his own responsibility by reference to the derangements of the person he had used to accomplish his purposes.

*Id.* at 534 (emphasis in original). Crick's jury was not instructed on a lesser included offense, however, because "there was no basis in the record to convict her of manslaughter on the theory that she was an accomplice." *Id.* Additionally, the Utah Supreme Court has held that

> it is not necessary for the accomplice to have the same intent that the principal actor possessed as long as the accomplice intended that an offense be committed. An accomplice will be held criminally responsible to the degree of his own mental state, not that of the principal. This prevents an individual who is charged as an accomplice from escaping criminal liability by arguing that the principal actor had a lower intent or diminished capacity when the crime was committed. Therefore, the first step in applying accomplice liability is to determine whether the individual charged as an accomplice had the intent that an underlying offense be committed.

*State v. Briggs*, 2008 UT 75, ¶ 14, 197 P.3d 628. *See State v. Alvarez*, 872 P.2d 450, 461 (Utah 1994) ("Party liability under section 76-2-202 does not require that the persons involved in the criminal conduct have the same mental state.").

¶26 Further, in *State v. Jeffs*, 2010 UT 49, 243 P.3d 1250, our Supreme Court reiterated "that an accomplice need not act with the

same intent, or mental state, as the principal."[2] *Id.* ¶ 49. Defendant argues that *Jeffs* assumes the requirement "that [Defendant] had to intend the death of [the victim] in order to be found guilty as an accomplice." However, *Jeffs* confirmed that "'accomplice liability adheres only when the accused acts with the mens rea to commit the principal offense.'"[3] *Id.* ¶ 44 (quoting *State v. Calliham*, 2002 UT 86, ¶ 64, 55 P.3d 573). In this case, Defendant was found guilty of acting as an accomplice to manslaughter, not murder, and it is manslaughter, not murder, which is the "principal offense" for purposes of *Jeffs*.[4] *See supra* note 3.

---

2. The State argues that *State v. Jeffs*, 2010 UT 49, 243 P.3d 1250, should not govern this case because Defendant was sentenced in May 2010 and the *Jeffs* decision was not issued until July 2010. *See generally State v. Dunn*, 850 P.2d 1201, 1228 (Utah 1993) ("To establish a claim of ineffectiveness based on an oversight or misreading of law, a defendant bears the burden of demonstrating why, on the basis of the law in effect at the time of trial, his or her trial counsel's performance was deficient."). Because we believe *Jeffs* to be only a clarification of existing precedent, we regard it as appropriate for inclusion in this discussion.

3. We recognize the potential confusion caused by the term "principal" in this sentence. Our understanding is that the "principal offense" is the offense of which the defendant is convicted under a theory of accomplice liability. In *Jeffs*, that offense was the same—the defendant was charged and convicted as an accomplice to the commission of rape. *See* 2010 UT 49, ¶ 1. But in the present case, Defendant, while charged with murder, was convicted of manslaughter notwithstanding that Alvey pled guilty to aggravated murder.

4. We note that Defendant was tried separately from Alvey. Defendant had his own jury that considered the facts relevant to his involvement in the victim's death. While some may question why the jury did not convict Defendant of aggravated murder, the crime to which Alvey pled, or murder, it was within the province

(continued...)

¶27    *Jeffs* states that

> [i]n those cases where the defendant solicits, requests, commands, or encourages another to commit an offense, the accomplice liability statute incorporates the default mental state of recklessly, knowingly, or intentionally. However, in those cases where the defendant is charged with aiding another in the *commission* of the offense, the accomplice liability statute requires that the defendant's aiding be "intentional."

*Id.* ¶ 50 (emphasis added). *See* Utah Code Ann. § 76-2-202 (LexisNexis 2012). *See also Jeffs*, 2010 UT 49, ¶ 52 ("Without Jeffs' proposed instruction as to intent, the jury could have convicted Jeffs if it found that Jeffs 'intentionally' did some act, and such intentional act *unintentionally* 'aided' Steed in having nonconsensual sexual intercourse with [the victim]. For example, even if Jeffs never intended for Steed to rape [the victim], the jury instruction allowed for the possibility that he would be found guilty simply because he intentionally performed the marriage ceremony and the existence of the marriage aided Steed in raping [the victim].") (emphasis in original).

¶28    In the instant case, there is ample evidence to support a determination that Defendant acted recklessly. Defendant called Alvey while Alvey was driving the victim up into the canyon and said, "Don't bring her back." Defendant later awarded Alvey a blue bandana for "killing [the victim]" and "doing a good job." He admitted to authorities that he had earlier told Alvey there was a

---

4. (...continued)
of the jury to convict Defendant of the lesser included offense of manslaughter, even though the record before us would readily sustain Defendant's conviction for being an accomplice to aggravated murder or murder. *See, e.g., State v. Crick*, 675 P.2d 527, 534 (Utah 1983).

"green light" on the victim and that he had a "gut feeling" that Alvey was going to kill the victim. Defendant told police that he "might have said something that did go into [Alvey]'s mind along the lines of doing it." This evidence supports the jury's conclusion that Defendant was aware of but consciously disregarded a substantial and unjustifiable risk that the victim would be killed by Alvey as a result of Defendant's words and actions. *See* Utah Code Ann. § 76-2-103(3); *Jeffs*, 2010 UT 49, ¶ 50. Given the sequence of events, it was reasonable for the jury to conclude that Defendant's intentional acts and statements to Alvey were reckless because Defendant recognized and disregarded the distinct possibility that Alvey would interpret them to be a directive to murder the victim. The *Jeffs* decision does not undercut the propriety of this result.[5] *Cf. State v. Howell*, 649 P.2d 91, 95 (Utah 1982) ("[W]e hold that a trial court may properly give a lesser included offense instruction, even over a defendant's objection, if there is clearly no risk that the defendant will be prejudiced by lack of notice and preparation so as to deprive him of a full and fair opportunity to defend himself.").

¶29     Defendant also argues that "[i]f [Defendant]'s acts were only 'reckless,' without intent that the murder occur, then he is not an accomplice to the underlying crime of murder" because murder is a specific intent crime. We do not view this argument as persuasive because "it is not necessary for the accomplice to have the same intent that the principal actor possessed as long as the accomplice intended that *an offense* be committed." *See State v. Briggs*, 2008 UT

---

5. Defendant cites to *State v. Telford*, 2002 UT 51, 48 P.3d 228 (per curiam), and *State v. Calliham*, 2002 UT 86, 55 P.3d 573, in support of his argument that he must have acted with the mens rea required for the offense committed by the principal, i.e., Alvey Because neither of these decisions purported to overrule *State v. Crick*, 675 P.2d 527 (Utah 1983), or *State v. Alvarez*, 872 P.2d 450 (Utah 1994), and because both *Telford* and *Calliham* were issued before both *State v. Briggs*, 2008 UT 75, 197 P.3d 628, and *State v. Jeffs*, 2010 UT 49, 243 P.3d 1250, we do not view them as dispositive.

75, ¶ 14, 197 P.3d 628 (emphasis added). Nothing in the case law suggests that this standard applies only when the principal and the accomplice are both charged with crimes requiring the same intent, as Defendant contends. Having disregarded the potential that his words and actions demonstrated recklessness as to whether Alvey would take the victim's life, Defendant was properly convicted as an accomplice to manslaughter.[6]

## II. Defendant's Trial Counsel Was Not Ineffective.

¶30    To establish a claim of ineffective assistance of counsel, a defendant must demonstrate "(1) that counsel's performance was objectively deficient, and (2) a reasonable probability exists that but for the deficient conduct defendant would have obtained a more favorable outcome at trial." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Defendant must overcome a "strong presumption that . . . trial counsel rendered adequate assistance." *State v. Crosby*, 927 P.2d 638, 644 (Utah 1996). We accord considerable deference in deciding whether the "challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A.    Defendant's Trial Counsel Was Not Ineffective for Requesting a Jury Instruction on Negligent Homicide.

¶31    Defense counsel's decision to request or not request a lesser included offense instruction at trial is afforded this same deference, in recognition of the fact that counsel is in the best position to gauge the defendant's likelihood of defeating a charge outright and to weigh the possibility that acquittal is not in the cards but that a

---

6. Because we determine that Defendant could legally be convicted as an accomplice to manslaughter, it was not ineffective for defense counsel to fail to make an argument to the contrary. "[T]he failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance." *State v. Malmrose*, 649 P.2d 56, 58 (Utah 1982).

jury might be satisfied with a conviction on a lesser charge. *Cf. State v. Hauptman*, 2011 UT App 75, ¶ 10 n.4, 249 P.3d 1009 (recognizing that "the failure to request such an instruction may have been part of defense counsel's trial strategy"); *State v. Hall*, 946 P.2d 712, 723 (Utah Ct. App. 1997) ("Defense counsel's failure to request the instructions, however, is entirely consistent with his trial strategy.").

¶32     In this case, it is probable that defense counsel believed that the jury was likely to convict Defendant for his considerable involvement in the events leading to the victim's death. In an effort to avoid a much more serious sentence for a conviction of aggravated murder or murder, defense counsel no doubt requested the instruction for the lesser included offense of negligent homicide in order to provide the jury with an alternative that would work to Defendant's advantage. *See State v. Tennyson*, 850 P.2d 461, 465 (Utah Ct. App. 1993) (noting that "this court will not second-guess trial counsel's legitimate strategic choices"). Therefore, "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel*, 350 U.S. at 101). Requesting the instruction was not ineffective, even if the request then opened the door to an instruction for manslaughter. We agree with the trial court that "[b]y requesting this instruction on a lesser included offense, Defendant expanded the scope of possible 'underlying offenses' to include criminal homicide in all of its pertinent variations." The critical issue in Defendant's trial was his mental state. Once Defendant opened the door with the request for the negligent homicide instruction, it was a logical step for the court to include the intermediate mental state required of manslaughter. The evidence of record simply was not amenable to resolution only at the two extremes of the spectrum—i.e., either Defendant intended that his comments to Alvey would lead to the victim's murder or he was merely negligent with respect to where his comments might lead. On the contrary, and as shown by the verdict actually reached by the jury, the evidence was also amenable to the conclusion that Defendant was reckless with respect to the end result of his remarks.

B.  Defendant's Trial Counsel Was Not Ineffective for Failing to Argue that the Manslaughter Instruction Needed To Be Submitted in a Prior Written Motion.

¶33  Defendant argues that his trial counsel was ineffective for failing to argue that the prosecutor's oral request for a manslaughter jury instruction violated rule 19 of the Utah Rules of Criminal Procedure. *See* Utah R. Crim. P. 19 ("At the final pretrial conference or at such other time as the court directs, a party may file a written request that the court instruct the jury on the law as set forth in the request. . . . The court shall inform the parties of its action upon a requested instruction prior to instructing the jury, and it shall furnish the parties with a copy of its proposed instructions, unless the parties waive this requirement."). Counsel was not ineffective in this regard because the State had already submitted a written request for a manslaughter instruction prior to trial, thereby providing Defendant with pretrial written notice. Furthermore, rule 19 does not require written notice. *See* Utah R. Crim. P. 19. In any event, a court "may, over the objection of the defendant's counsel, give any instruction that is in proper form, states the law correctly, and does not prejudice the defendant." *State v. Hansen*, 734 P.2d 421, 428 (Utah 1986). *Accord State v. Torres-Garcia*, 2006 UT App 45, ¶ 23 n.4, 131 P.3d 292 (holding, on the authority of *Hansen*, that the trial court's decision to include a limiting instruction was proper).

C.  Defense Counsel Was Not Ineffective for Failing to Argue that the State's Requested Instruction for the Lesser Included Offense of Manslaughter Violated *State v. Baker*.

¶34  *State v. Baker*, 671 P.2d 152 (Utah 1983), recognizes that different tests apply when the defendant requests an instruction for a lesser included offense as opposed to when the State makes such a request. *See id.* at 156–59. The State is entitled to a lesser included offense instruction when the elements of the lesser included offense are "necessarily . . . included within the original charged offense." *See id.* at 156. Defendant could not have committed depraved indifference murder—the offense originally charged by the State—without having also committed reckless manslaughter. *See*

*State v. Standiford*, 769 P.2d 254, 263–64 (Utah 1988) (explaining that the difference between depraved indifference murder and reckless manslaughter is the "slight degree of difference" in the "probability of the risk of death" ignored by the defendant); Utah Code Ann. § 76-2-104 (LexisNexis 2012) (noting that a more culpable mental state satisfies the mental state element of an offense requiring a less culpable mental state). Therefore, counsel was not ineffective for failing to argue that the State's requested instruction violated *Baker*. *See State v. Howell*, 649 P.2d 91, 95 (Utah 1982) ("[W]e hold that a trial court may properly give a lesser included offense instruction, even over a defendant's objection, if there is clearly no risk that the defendant will be prejudiced by lack of notice and preparation so as to deprive him of a full and fair opportunity to defend himself.").[7]

---

7. Defendant also makes a cursory argument that his trial counsel was deficient for failing to request a bill of particulars, and thereby "opened the door for the jury to expand the scope of [Defendant]'s reckless acts to weeks and even months before the actual crime." Defendant has failed to adequately brief this argument beyond mention of the statute granting the right to request a bill of particulars. *See* Utah Code Ann. § 77-14-1 (LexisNexis 2012) ("The prosecuting attorney, on timely written demand of the defendant, shall within 10 days, or such other time as the court may allow, specify in writing as particularly as is known to him the place, date and time of the commission of the offense charged."). The instructions provided to the jury specifically directed the jury to consider the acts occurring "on or about December 26, 2008." Defendant fails to show how this was insufficient, beyond mentioning that the jury asked three questions during its deliberations. The Rules of Appellate Procedure require that a party set forth the "contentions and reasons . . . with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with citations to the authorities, statutes, and parts of the record relied on." Utah R. App. P. 24(a)(9). An "argument that does not contain reasoned analysis based upon relevant legal authority is inadequately briefed and we

(continued...)

### III. The Trial Court's Misinterpretation of the Dangerous Weapon Enhancement Was Harmless Error.

¶35 The trial court admitted at the hearing addressing Defendant's motion for a new trial that it had originally misinterpreted the dangerous weapon enhancement. *See* Utah Code Ann. § 76-3-203.8 (LexisNexis 2012). While the court sentenced Defendant to a one-to-five-year increase on his sentence as a result of the enhancement, it acknowledged the error after Defendant raised the issue that the court had the discretion not to impose the full five-year enhancement. The court explained, however, that had it correctly understood the statute at the time of sentencing, it would have imposed the same sentence regardless—a sentiment that is entirely credible given the record before us. Therefore, the error was harmless. *See State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992) (holding that an error is harmless if "there is no reasonable likelihood that the error affected the outcome of the proceedings"). The trial court has already accounted for its error, and there is no need to remand for resentencing.[8]

---

7. (...continued)
will not consider the issue." *State v. Sloan*, 2003 UT App 170, ¶ 15 n.1, 72 P.3d 138 (citation and internal quotation marks omitted).

8. Defendant also argues that plain error resulted from a number of his trial counsel's other decisions at trial. However, given our resolution of the issues dealt with in this opinion, such as the application of the accomplice liability statute, *see supra* section I, we need not address those issues. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989) ("[T]his [c]ourt need not analyze and address in writing every argument, issue, or claim raised and properly before us on appeal. Rather, it is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court.").

CONCLUSION

¶36    A defendant charged as an accomplice can be convicted of a different crime than the principal actor. A theory of accomplice liability does not foreclose a conviction for manslaughter in this case. Defendant has established neither that his trial counsel rendered ineffective assistance nor that the trial court committed plain error. The court remedied its misinterpretation of the dangerous weapon enhancement, making its admitted error harmless.

¶37    Affirmed.

————