2014 UT App 42

**STATE of Utah, Plaintiff and Appellee,**

v.

**Pailate K. LOMU, Defendant and Appellant.**

**No. 20110713–CA.**

Court of Appeals of Utah.

Feb. 27, 2014.

Joanna E. Landau, for Appellant.

Sean D. Reyes and John J. Nielsen, for Appellee.

Judge GREGORY K. ORME authored the lead opinion, in which Judges J. FREDERIC VOROS JR. and STEPHEN L. ROTH concurred. Judge VOROS authored a concurring opinion, in which JUDGE ROTH concurred.

### Opinion

ORME, Judge:

¶ 1 Defendant Pailate Lomu appeals from a conviction for robbery. *See* Utah Code Ann. § 76–6–301 (LexisNexis 2012).[1] We affirm.

### BACKGROUND

¶ 2 In June 2010, Defendant entered a Maverik convenience store with two other men around 2:00 a.m.[2] Defendant and one of the men went to the beer cooler and each grabbed two cases of Budweiser beer. The third man stood at the door, holding it open. Surveillance video shows Defendant rushing out the door while the man holding the door begins to point at and speak to the store clerk. After Defendant has exited the store, the man by the door can be heard on the video speaking to the store clerk. Not everything he says is audible, but the phrase "shoot you" comes through loud and clear.

¶ 3 Defendant was charged with aggravated robbery but convicted of the lesser crime of robbery, *see id.*, which conviction was subject to an in-concert enhancement, *see id.* § 76–3–203.1.

### ISSUES AND STANDARDS OF REVIEW

¶ 4 Defendant first argues that there is insufficient evidence to support his conviction. "[W]e review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury." *State v. Shumway*, 2002 UT 124, ¶ 15, 63 P.3d 94. "We will reverse a jury conviction for insufficient evidence only when the evidence is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *Id.*

¶ 5 Second, Defendant argues that the trial court improperly instructed the jury. "Claims of erroneous jury instructions present questions of law that we review for correctness." *State v. Jeffs*, 2010 UT 49, ¶ 16, 243 P.3d 1250.

¶ 6 Third, Defendant argues that statements made by the prosecutor during closing argument and rebuttal constituted prosecutorial misconduct and warrant reversal. Be-

---

1. Because the statutory provisions in effect at the relevant time do not differ in any way material to our analysis from those now in effect, we cite the current version of the Utah Code as a convenience to the reader.

2. The day before trial in this case, Defendant was convicted of a similar robbery that took place in April 2010. Defendant appealed that conviction as well, and we have resolved that appeal in a separate opinion also issued today. *See State v. Lomu (Lomu I)*, 2014 UT App 41, 321 P.3d 243, 2014 WL 783754.

cause this claim is unpreserved, Defendant asks that we review it for plain error and ineffective assistance of counsel. *See State v. Calliham*, 2002 UT 86, ¶ 62, 55 P.3d 573. Plain error requires obvious, prejudicial error. *See State v. Dunn*, 850 P.2d 1201, 1209 (Utah 1993). And claims of ineffective assistance raised for the first time on appeal present questions of law. *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

¶ 7 Defendant's final argument is that reversal is warranted under the doctrine of cumulative error. We will reverse a conviction under this doctrine when "the cumulative effect of the several errors undermines our confidence ... that a fair trial was had." *Dunn*, 850 P.2d at 1229 (citation and internal quotation marks omitted).

## ANALYSIS

### I. Sufficiency of the Evidence

¶ 8 Defendant argues that there was insufficient evidence to prove he had the necessary mens rea to be convicted as a party to robbery. A person commits robbery if "the person unlawfully and intentionally takes ... personal property in the possession of another ... against his will, by means of force or fear, and with a purpose or intent to deprive the person ... of the personal property," or if the person "intentionally or knowingly uses force or fear of immediate force against another in the course of committing a theft or wrongful appropriation." Utah Code Ann. § 76–6–301(1) (LexisNexis 2012). In determining whether the evidence presented to the jury was sufficient to support its verdict, we will "not sit as a second trier of fact." *State v. Boyd*, 2001 UT 30, ¶ 16, 25 P.3d 985. "So long as there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime can reasonably be made, our inquiry stops." *State v. Booker*, 709 P.2d 342, 345 (Utah 1985).

¶ 9 There is no dispute that Defendant committed theft when he took the beer from the convenience store without paying for it. The question is whether there was sufficient evidence for the jury to reasonably conclude that Defendant took the beer "by means of

force or fear" or that he "use[d] ... fear of immediate force" during the theft, or whether, as he maintains, he was guilty only of shoplifting.

¶ 10 Defendant argues that he was unaware of the threat made by his associate and that nothing other than his mere presence connects him to the threat. The store clerk, however, testified that he was threatened by the associate as he stood at the door—a threat that began when the associate raised his arm, pointing to the store clerk. Surveillance video played for the jury shows Defendant was still in the store and well within earshot of the associate at the door when the associate raised his arm and, according to the clerk, began to threaten the clerk. Based on this evidence, the jury could have reasonably inferred that Defendant knew that the threat was being made and that he therefore intentionally took advantage of the threat and the fear it created when he continued to rush out the door with stolen goods. *See State v. Garcia–Vargas*, 2012 UT App 270, ¶ 17, 287 P.3d 474 (holding that intent to take advantage of another's conduct is assumed when a party continues to "actively partipate[ ]" instead of "fleeing or remaining without participating"). Thus, "upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find" that Defendant committed robbery. *See State v. Dibello*, 780 P.2d 1221, 1225 (Utah 1989).

¶ 11 Defendant next argues that the trial court failed to properly instruct the jury. "The court has a duty to instruct the jury on the relevant law, and the court may, even over the defendant's objection, 'give any instruction that is in proper form, states the law correctly, and does not prejudice the defendant.'" *State v. Low*, 2008 UT 58, ¶ 27, 192 P.3d 867 (quoting *State v. Hansen*, 734 P.2d 421, 428 (Utah 1986)). We will reverse when "a substantial likelihood exists that the instructions ..., when considered together, confused and misled the jury in its deliberation on the principal issues of the case to the detriment of the defendant." *State v. Potter*, 627 P.2d 75, 80 (Utah 1981).

¶ 12 Defendant first argues that Instruction 43A improperly instructed the jury as to in-concert liability. The jury instruction stated that in addition to determining whether Defendant committed aggravated robbery, or any lesser included crime such as robbery, the jury should also determine if the crime was committed in concert with two or more other persons.

¶ 13 The instruction was based on Utah Code section 76–3–203.1, which states, in part, that in-concert liability attaches when a defendant is "aided or encouraged by at least two other persons in committing the offense and was aware of this aid or encouragement," and each of those persons was "physically present" or "participated as a party" to an offense such as theft, robbery, or aggravated robbery. *See* Utah Code Ann. § 76–3–203.1(1)(b), (5) (LexisNexis 2012). The statute also states that "other persons participating as parties need not have the intent to engage in the same offense or degree of offense as the defendant." *Id.* § 76–3–203.1(1)(c)(i).

¶ 14 Defendant argues that the instruction given to the jury is an improper statement of the law, particularly the portion reading, "[D]efendant can be found to have acted in concert with two or more persons even if the other persons did not have the intent to engage in the same offense or degree of offense as the defendant." Defendant argues that "[u]nder instruction 43a, if read literally, a person who was merely physically present at a crime committed by two others, could be guilty of in-concert activity through that presence, because there would be no need to determine intent for any particular crime."

¶ 15 We disagree and conclude that Instruction 43A was a correct statement of law and that there was accordingly no prejudice to Defendant. The instruction clearly restated the applicable law, instructing the jury to determine whether Defendant committed a crime in concert with two or more persons. Another section of the instruction stated that other persons are only considered to have been involved in the commission of the crime if they "aided or encouraged" Defendant. When considering the instruction as a whole, there was no risk that the jury would believe that mere physical presence was sufficient for in-concert liability.

¶ 16 We note that any error in this instruction would not have impacted the jury's determination that Defendant was guilty of robbery. Defendant argues that the instruction "told jurors they could convict [Defendant] of in-concert activity if he was merely physically present when others committed a crime." But Defendant's conviction of robbery had necessarily already been determined by the jury. The wording of the instruction made it clear that the jury was to deliberate over whether two or more other persons were involved in the crime—robbery—that they had already determined Defendant had committed, *not* whether Defendant was liable or guilty for a crime because he himself was present as an "other person" during the commission of someone else's crime. *See* Utah Code Ann. § 76–3–203.1. Thus, even if the instruction had erroneously implied that a person can be guilty of acting in concert because of the mere presence of two other people, the only harm an erroneous instruction could have caused was an improper enhancement of Defendant's sentence. But an improper enhancement was virtually impossible in light of the evidence in this case. The evidence showed Defendant walking into the store with two men, one of whom stood at the door and threatened the clerk and the other of whom exited the store with Defendant while both carried a case of Budweiser in each hand. No evidence exists upon which the jury could have found that one of the men was only an innocent bystander or at the store on a wholly independent mission during Defendant's crime instead of actively aiding or encouraging Defendant. Therefore, any error in the instruction was harmless.

¶ 17 We are similarly unpersuaded as to Defendant's other claims regarding Instructions 32A, 32B, and 33. Defendant argues that these three instructions inaccurately instructed the jury on how to determine mens rea. During deliberations, the jury sent a note to the trial court. The note stated:

> The prosecution states that if one person in a group of three commits aggravated robbery, all three are guilty of aggravated

robbery. However, the defense states that when assessing the mental state, we should consider the defendant's intentions individually, not collectively with his associates. Help us to reconcile these two notions. The trial court responded, "I believe that you may reconcile these notions by reviewing Instructions No. 9, 32A, 32B, and 33 of your jury instructions."

¶ 18 Quoting *State v. Briggs*, 2008 UT 75, 197 P.3d 628, Defendant argues that Instruction 33 was an inadequate explanation of accomplice liability because it "did not clarify to the jury that they had to determine whether [Defendant] 'acted with both the intent that the underlying offense be committed and the intent to aid the principal in robbery.'" *Id.* ¶ 13. Defendant also contends that Instructions 32A and 32B failed to "accurately state the law, clarify the terms necessary to understand mens rea, or explain how to determine accomplice mens rea versus mens rea for in-concert activity." Defendant argues that the jury was confused by the instructions, as evidenced by their question during deliberations. Defendant contends that the verdict is the clearest evidence of the error in the instructions because "[t]he jury verdict suggests either the jury did not believe the evidence of a threat or did not believe [Defendant] intended to use a threat to take beer." Defendant goes on to argue that "[w]here the only threat was one to use a dangerous weapon, there was no way to disbelieve the threat AND convict [Defendant] of robbery for the use of force in taking the beer, yet the jury did just that."

■ ¶ 19 We conclude that the instructions properly informed the jury as to the relevant law. We first note that Instruction 33 quoted the applicable statutory provision verbatim. *See* Utah Code Ann. § 76-2-202 (LexisNexis 2012) ("Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for

such conduct."). We determined this exact instruction to be adequate in *State v. Augustine*, 2013 UT App 61, 298 P.3d 693, because it was accompanied by another instruction that clearly laid out the intent necessary for the underlying crime. *Id.* ¶ 10. Here, Instruction 33 was similarly accompanied by an instruction outlining the elements of robbery, including the requisite intent, i.e., intent to deprive someone of personal property. We therefore reject the argument that Instruction 33 was insufficient or improper.

■ ¶ 20 As to the other two instructions, we conclude—contrary to Defendant's reasoning—that the jury's verdict is actually proof of the accuracy and clarity of the instructions. Granted, the jurors were initially confused by the conflicting statements of the prosecutor and defense counsel, and they asked for clarification. But they apparently found the instructions the trial court pointed them to adequate because they then quickly came to a verdict convicting Defendant of a lesser crime than they would have had they conflated Defendant's mental state with that of the man at the door who made the threat to employ a dangerous weapon. According to the clerk's testimony, Defendant was still inside the store when the man at the door began to threaten the clerk. The jury clearly thought this was sufficient evidence to convict Defendant of robbery. *See supra* ¶ 10. But despite the fact that, according to the clerk, the threat eventually morphed into one involving the threatened use of a dangerous weapon, the jury still did not convict Defendant of aggravated robbery. The jurors clearly took into account only the mental state that they believed Defendant possessed and convicted him accordingly.[3] We conclude that the instructions regarding mens rea were correct statements of the law. *See State v. Low*, 2008 UT 58, ¶ 27, 192 P.3d 867.

### III. Prosecutorial Misconduct

¶ 21 Defendant argues that the prosecutor misstated the law during closing argument. Because this claim was not preserved, Defendant relies on the doctrines of plain error

---

3. As we noted in *Lomu I*, identical mental states among perpetrators are not required for conviction under a theory of accomplice liability. *See* 2014 UT App 41, ¶ 8 n. 3, 321 P.3d 243. *See also State v. Binkerd*, 2013 UT App 216, ¶¶ 24–29, 310 P.3d 755.

and ineffective assistance of counsel. *See State v. Calliham*, 2002 UT 86, ¶ 62, 55 P.3d 573. Defendant must therefore show "(1) that the prosecutor's comments were so obviously improper that the trial court had an opportunity to address the error, or (2) that in failing to object to the prosecutor's remarks, his counsel's performance 'fell below an objective standard of reasonable professional judgment.'" *Id.* (quoting *State v. Chacon*, 962 P.2d 48, 50 (Utah 1998)) (additional citations omitted). "The line which separates acceptable from improper advocacy is often difficult to draw; there is frequently a gray zone." *State v. Hopkins*, 782 P.2d 475, 480 (Utah 1989).

¶ 22 For Defendant to prevail under either theory, the error must have been prejudicial. *See Calliham*, 2002 UT 86, ¶ 62, 55 P.3d 573. And in this context, we will assume that prejudice resulted to Defendant unless we can conclude that the error was harmless beyond a reasonable doubt. *See State v. Davis*, 2013 UT App 228, ¶¶ 9–12, 311 P.3d 538. A determination of whether the jury was likely influenced by the remarks "involves a consideration of the circumstances of the case as a whole. In undertaking such a consideration, it is appropriate to look at the evidence of defendant's guilt." *State v. Troy*, 688 P.2d 483, 486 (Utah 1984). In cases with "less compelling proof" we will "more closely scrutinize" the prosecutor's conduct. *Id.* But in cases where proof of guilt is strong, prejudice is less likely to have resulted from prosecutorial misconduct. *Id.* We will also take into account whether defense counsel had the opportunity to respond to the alleged error and whether any curative instructions were given by the court. *See State v. Kozlov*, 2012 UT App 114, ¶ 42, 276 P.3d 1207.

¶ 23 Defendant argues that the prosecutor conflated in-concert and accomplice liability when he stated,

These guys, as you've seen and as you've heard, were acting together, okay, in concert with each other. So if that's the $10,000 question ... I'm going to direct you to the what I call the $10,000 jury instruction, okay? So instruction number 33 is that instruction from the State's perspective, okay? This instruction is what I'm going to refer to you as party liability, okay? That's the term we're talking about in this instruction.

The prosecutor then read to the jury the instruction regarding accomplice liability. Defendant additionally argues that the prosecutor misstated the law by conflating in-concert and accomplice liability when he said the following during rebuttal:

I want to talk to you one more time about party liability, okay, and this notion that these are just—these three individual people are acting independently of each other and the defendant is just a thief, and this threatening big guy over there is somebody who he's not acting in concert with, okay? This is perhaps the best evidence of the fact that they are parties to each other, okay? And they are acting in concert with each other, okay?

Defendant argues that "[t]he jury was confused and led to believe, contrary to Utah law, [that] they could convict [Defendant] for robbery if he had only the intent to act in concert with the other men in the [s]tore."

¶ 24 We first conclude that any error was not so obviously improper that the trial court should have corrected the error sua sponte or that defense counsel should have objected to the statements. While the prosecutor did mention in-concert and accomplice liability, the facts before the jury made possible both a finding of accomplice liability and of eligibility for an enhancement based on in-concert activity. And while mentioning them together may have been confusing, the prosecutor never told the jury that a finding of in-concert liability should automatically lead to a finding of the mens rea for accomplice liability.

¶ 25 More importantly, however, we determine that any alleged plain error on the part of the trial court or ineffectiveness of counsel would have been harmless beyond a reasonable doubt when the statements are viewed in context. *See Troy*, 688 P.2d at 486. First, proof of Defendant's guilt was strong. There was video evidence of Defendant and an associate taking beer out of the store without paying for it and eyewitness testimo-

ny that Defendant and the associate removed the beer while the store clerk was being threatened by a third man.

¶ 26 Second, defense counsel was able to respond to the first of the prosecutor's statements during closing argument. Defense counsel emphasized the jury's duty, pursuant to the instruction it was given, to determine Defendant's individual mental state in evaluating of which crime Defendant was guilty. Defense counsel also explained that in-concert liability only involved the number of persons participating in the crime, that it was not related to intent, and that in-concert liability should only be determined after the jury had determined Defendant's mens rea and the corresponding crime of which he was guilty.

¶ 27 Third, any remaining confusion was certainly cleared up when the jurors sent a question inquiring whether they should assess Defendant's mental state individually or collectively. The trial court, with defense counsel's blessing, pointed the jury to its instructions. As discussed above, *supra* ¶ 20, the quick verdict at which the jury then arrived is evidence that the jury followed the law and was not confused by the prosecutor's remarks. By convicting Defendant of robbery instead of aggravated robbery, the jurors necessarily differentiated between what they found to be Defendant's own individual mens rea and the mens rea demonstrated by the man who threatened the store clerk. In sum, because proof of Defendant's guilt is strong; because defense counsel had the opportunity to respond, at least in part, to the prosecutor's statements; and because the trial court offered appropriate and sound guidance in directing them to the instructions that mattered, we conclude, beyond a reasonable doubt, that Defendant was not harmed by the prosecutor's statements during closing argument.

## IV. Cumulative Error

¶ 28 Defendant argues that the cumulative effect of the errors that occurred at trial warrants reversal. Because we have determined that Defendant was not prejudiced by the claimed prosecutorial misconduct and has demonstrated no other errors, our confidence in the verdict has in no way been undermined, and we decline to reverse on a theory of cumulative error. *See State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993).

## CONCLUSION

¶ 29 Sufficient evidence existed from which a jury could find Defendant guilty of robbery. The jury instructions properly stated the relevant law and did not prejudice Defendant. And Defendant cannot show that he was harmed by the prosecutor's statements during closing argument.

¶ 30 Affirmed.

VOROS, Judge (concurring):

¶ 31 I concur in the majority opinion. I write separately to suggest that our accomplice liability statute be amended to clearly reflect relevant case law and that, in the interim, trial judges would do well to instruct juries on that case law if requested.

¶ 32 The accomplice liability statute expands criminal liability to embrace a person who assists another person to commit an offense:

> ·Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct.

Utah Code Ann. § 76–2–202 (LexisNexis 2012). Utah courts read this statute to mean that "an accomplice need not act with the same intent, or mental state, as the principal," *State v. Jeffs*, 2010 UT 49, ¶ 49, 243 P.3d 1250, "as long as the accomplice intended that an offense be committed," *State v. Briggs*, 2008 UT 75, ¶ 14, 197 P.3d 628 (citing *State v. Alvarez*, 872 P.2d 450, 461 (Utah 1994)). Thus, "[a]n accomplice will be held criminally responsible to the degree of his own mental state, not that of the principal." *Briggs*, 2008 UT 75, ¶ 14, 197 P.3d 628; *accord State v. Crick*, 675 P.2d 527, 534 (Utah 1983). *But see State v. Telford*, 2002 UT 51, ¶ 4, 48 P.3d 228 (per curiam) ("The accomplice liability provision requires the fact find-

er to determine that the accomplice had the same mental state as the person who directly committed the crime."), *called into question by State v. Binkerd,* 2013 UT App 216, ¶ 28 n. 5, 310 P.3d 755.

¶ 33 This court has held that the foregoing principles are sufficiently communicated to a jury by a combination of an instruction reciting section 76–2–202 verbatim and an instruction stating that to convict the defendant of attempted murder based on the accomplice liability statute the jury must find that he "intentionally attempted to cause the death of another person." *State v. Augustine,* 2013 UT App 61, ¶ 10, 298 P.3d 693 (stating also that the jury had before it "compelling evidence of [the defendant's] liability as a principal"). But I question whether an ordinary juror is likely to glean from the words of the statute alone the rule that criminal actors with different mental states are guilty of different crimes.

¶ 34 Accordingly, I encourage the legislature to consider amending the accomplice liability statute to clearly reflect the gloss our case law has properly put on it: that each actor's mental state determines that actor's liability. In the meantime, I believe justice would be served if trial courts explicitly instructed juries to this effect upon request.